## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**MACH FLYNT INC**                          **CASE NO.  2:24-CV-01444**

**VERSUS**                                  **JUDGE JAMES D. CAIN, JR.**

**VERITIV OPERATING CO**                    **MAGISTRATE JUDGE LEBLANC**

### <u>MEMORANDUM RULING</u>

Before the Court is "Veritiv Operating Company's Motion to Dismiss or Transfer" (Doc. 21) wherein Defendant, Veritiv Operating Co. ("Veritiv") moves to dismiss Plaintiff MACH Flynt, Inc.'s ("Flynt") action under: (1) Federal Rules of Civil Procedure 12(b)(3) for improper venue (or transferred to the Southern District of Florida), (2) 12(b)(6) for failure to state a claim, and (3) 12(b)(7) for failure to join required parties.  Alternatively, Veritiv moves to transfer this matter to the United States District Court for the Southern District of Ohio (Western Division) under 28 U.S.C. § 1404.

### <u>BACKGROUND</u>

This lawsuit involves custom Costco Kirkland Signature Spiced Rum bottles from a Chinese manufacturer, shipped directly to a bottling company in Ohio.  The bottles were allegedly broken on the Ohio assembly line and rejected by Costco under a Master Supply Agreement ("MSA") executed by Flynt and Veritiv on October 30, 2023, that mandates that all disputes be resolved in the "state and federal courts situated in Miami-Dade County, Florida."

Flynt is a Louisiana-based importer, wholesaler, and distributor of spirits.[1] Flynt purchases glass packaging products with various suppliers to bottle its spirits.[2] Flynt alleges the following in its Complaint. Flynt and Veritiv[3] executed the MSA, which obligated Veritiv to provide Flynt with these Products (sometimes referred to as "bottles").[4] The MSA provides the following express warranties:

> Seller represents, warrants and covenants to Buyer that, upon delivery, the Products (i) conform in all material respects to agreed written descriptions and/or specifications; (ii) are free from defects in material and workmanship; (iii) are sold free of liens, security interests and other encumbrances.[5]

On or about January 25, 2024, Flynt received the bottles[6] from Veritiv pursuant to the terms of the MSA, and thereafter, Flynt remitted payment to Veritiv in the amount of $366,145.36.[7] Subsequently, Flynt discovered that the bottles contained defects in material and/or were non-conforming in violation of the express warranties.[8]  Flynt alleges that the bottles were defective and/or non-conforming in that there was breakage, cracks, bore hole cracks, mold release on the bottles, bubbles in the glass, split finishes and thin glass.

---

[1] Complaint, ¶ 5, Doc. 1.
[2] *Id.*
[3] Veritiv is an Atlanta-based supplier of rigid packaging products, including glass and plastic containers. In 2017, Veritiv acquired All American Containers ("AAC") who sources made-to-order glass bottles from manufacturers around the world, and in this lawsuit from non-party Shandong Jinrgui Packing Co., Ltd ("Shandong"), a Chinese glass manufacturer. Defendant's exhibit 1, Declaration of Jason Mietus, ¶ ¶ 3-5, 8.
[4] *Id.* ¶ 6.
[5] Plaintiff's exhibit 1, Sealed Doc. 19, p. 2, ¶ 6.
[6] The bottles were shipped to a bottling facility in Cincinnati, Ohio maintained by Meier Wine Cellars, Inc. who conducted the initial bottling "run" that resulted in the breakage alleged in Flynt's Complaint. Defendant's exhibit 1, Declaration of Jason Mietus, ¶ 4. Costco was the end-customer for the Spiced Rum bottles and put its orders on hold due to concerns of breakage. *Id.* ¶ 7.
[7] Complaint, ¶ 7, Doc. 1.
[8] *Id.* ¶ 8.

Flynt alleges that Veritiv breached the MSA due to the alleged defects, and also that the bottles failed to adhere to industry standards.[9] Flynt sent Veritiv notice of the defects and/or non-conformity on March 20, 2024,[10] and informed Veritiv that it was rejecting all Products delivered to or produced for Flynt under the Agreement. Veritiv received the Notice on April 10, 2024. Flynt requested a prompt refund of its payment. Veritiv has not refunded the payment. Flynt is alleging that Veritiv has breached the MSA as a result of the defective and/or non-conforming bottles and refusing to issue a refund. Flynt also seeks a declaration that: "1) the Products are defective and/or non-conforming, and 2) the Agreement is canceled and/or terminated."[11]

## LAW AND ANALYSIS

The parties do not dispute that Delaware law applies to the MSA. "Under [Delaware's] standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract." *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014). "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). "We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." *Id.* We will not read a contract to render a provision or term "meaningless or illusory." *Id.* "[A] contract must contain all material terms in order

---

[9] Specifically, the bottles were not laser imprinted with production date and time, and the pallets on which the bottles were packaged were not labeled in production order prohibiting the ability to trace the bottles.
[10] Plaintiff's exhibit 2.
[11] Complaint, ¶¶ 12-19, Doc. 1.

to be enforceable, and specific performance will only be granted when an agreement is clear and definite, and a court does not need to supply essential contract terms." *Id.* When the contract is clear and unambiguous, we will give effect to the plain meaning of the contract's terms and provisions. *Id.* at 1160. On the contrary, when we may reasonably ascribe multiple and different interpretations to a contract, we will find that the contract is ambiguous. *Id.* An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract. *Id.* If a contract is ambiguous, we will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party. *Id.* The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous. *Id.* The determination of ambiguity lies within the sole province of the court. *Id.*

*Improper venue*

Veritiv maintains that there is nothing to connect Flynt's claims to the Western District of Louisiana, but for the fact that Flynt's international distribution headquarters is located in Lake Charles, Louisiana. Veritiv informs the Court that the bottles were shipped from China to an Ohio assembly line where they were allegedly broken and rejected by Flynt's end customer, Costco.[12] Veritiv also suggests to the Court that the MSA mandates that all disputes be resolved in the "state and federal courts situated in Miami-Dade County, Florida."[13]

---

[12] Memorandum in Support, p. 1, Doc. 21-1.
[13] Defendant's exhibit 1, Veritiv Decl., ¶¶ 11-14 & Decl. exhibit C.

Flynt argues otherwise and maintains that the term of the MSA do not mandate that all disputes be resolved in Florida because the MSA does not contain a forum selection clause. Here, Veritiv argues that a forum selection clause has been incorporated into the MSA through each of Flynt's four orders and the MSA's Merger Clause.[14] The Merger Clause is as follows:

> This Agreement, including its exhibits and attachments, and together with all Order(s) hereunder, constitutes the entire agreement between the parties with respect to the subject matter hereto and supersedes all prior or contemporaneous understandings, whether written, oral or implied, with respect hereto.  This Agreement may only be changed, amended or modified by a writing signed by a duly authorized representative of each party.[15]

Regarding the bottles in this lawsuit, Flynt executed a sales order on July 27, 2023. This particular sales order stated that "Your order is governed by AAC terms and conditions of sale at  https://allamericancontainers.com/terms-of-sale/."[16] Veritiv contends that the AAC terms and conditions are the same as the Veritiv Corporation terms and conditions, thus incorporating the forum selection clause into the MSA.

Veritiv contends that the MSA's terms and conditions provide that Flynt's "sole and exclusive remedy with respect to any claim arising from or related to such sale and these Terms or Orders is expressly limited to, at Seller's option, the replacement of goods or any non-conforming portions thereof or the repayment of, or crediting Purchaser with, an amount equal to the purchase price of such non-conforming goods;" (ii) "EACH PARTY HEREBY WAIVES ITS RESPECTIVE RIGHT TO A JURY TRIAL OF ANY CLAIMS

---

[14] Doc. 21-1, p. 12.
[15] Plaintiff's exhibit 1, MSA, Docs. 19 and 20, pp. 3-4.
[16] Exhibit B, attached to Defendant's exhibit 1, Mietus Declaration.

ARISING FROM OR RELATED TO THESE TERMS"; and (iii) "The parties hereby irrevocably consent to the exclusive jurisdiction of the state and federal courts situated in Miami-Dade County, Florida."[17]

After signing the MSA, Flynt executed three purchase orders from Veritiv for direct shipment from Shandong to Cincinnati, Ohio, where the bottles would be stored at Flynt's Brendamour Warehouse and filled with spiced rum by Meier's Wine Cellars, Inc. ("Meier's") at Meier's Cincinnati bottling facility.[18] Flynt later changed its delivery instruction to have the bottles shipped to Veritiv's Belle Vernon, Pennsylvania Warehouse.[19] Each of Flynt's orders state that it "is governed by Veritiv Corporation terms and conditions of sale,: and includes a handwritten note from Flynt stating *as negotiated by the parties on 10/30/2023."[20]* Veritiv suggests that the terms and conditions of sale are the same as the terms and conditions in Flynt's July 2023 order that: (i) limit Flynt's remedies in the event of defective products "solely and exclusively" to replacement or refund at Veritiv's election; (ii) waive jury trial in the event of any dispute; and (iii) provide for "exclusive jurisdiction of the state and federal courts situated in Miami-Dade County, Florida."[21]

Veritiv posits that there is a forum selection clause in Veritiv's terms and conditions, and incorporated into the MSA through each of Flynt's four orders, and the MSA Merger

---

[17] Defendant's exhibit 1, Veritiv/Mietus Declaration, ¶ ¶ 11-14, and Decl. exhibit C.
[18] *Id.* ¶ ¶ 6, 16.
[19] *Id.* ¶ 16.
[20] *Id.* ¶ 17, & Decl Exhibit D, *in globo.*
[21] Defendant's exhibit a, Veritiv/Mietus Decl., ¶ ¶ 17-18, & Decl. exhibit C.

Clause.[22] Vertiv argues that there is no basis to disregard this mandatory clause because the public interest factors favor Flynt pursuing its action in the Southern District of Florida.[23]

Flynt argues that the MSA does not contain a forum selection clause, and the plain terms of the MSA defeat Veritiv's argument. Flynt points to the "Orders: Dedicated Inventory" provision, which provides:

> All purchase orders ("Orders") for Products will be subject to the terms and conditions of this Agreement, whether or not this Agreement is expressly referenced therein. This Agreement, its attachments, exhibits and schedules, together with all Order(s) and documents issued hereunder, are a complete and exclusive statement of the agreement between the parties with respect to the Products provided to Buyer by Seller. Unless otherwise agreed in writing, no other general terms or conditions contained or referenced in any purchase order, proposal, acknowledgment or other document shall be binding on either party.[24]

Flynt contends that this provision along with the "Merger Clause" stated above demonstrates that the AAC terms and conditions referenced in the July 2023 purchase order are not merged into the MSA. Instead, the November 2023 purchase orders were subject to the terms and conditions of the MSA and as such, no other general terms and conditions contained in the purchase orders (specifically the July 27, 2023) were binding on the parties. Additionally, Flynt argues that the July 27, 2023, purchase order (which allegedly incorporate the forum selection clause found in the AAC terms and conditions of sale)

---

[22] Doc. 20 ¶ 13 (Redacted exhibit 1 att. to Complaint).
[23] Veritiv relies on reports of the Administrative Office of the U.S. Court ("AO"), which reflect that the Western District of Louisiana has an overall caseload increase of 3.9 percent compared to 2019, with its seven Judges now averaging 454 cases each, whereas the Southern District of Florida has an overall caseload decrease of 19.3 percent compared to 2019, with its 18 Judges now averaging 311 cases each.
[24] Doc. 20, p. 1.

predates the execution of the October 30, 2023, MSA, and the MSA's "Entire Agreement" provision provides that the MSA "supersedes all prior or contemporaneous understandings, whether written, oral or implied, ..."[25] Flynt posits that the October 2023, MSA supersedes the July 2023, purchase order. Flynt also remarks that the July 2023, purchase order was for the bottle mold only, not the first order of Spiced Rum bottles as suggested by Veritiv.[26] Flynt informs the Court that the subsequent purchase orders made in November 2023, which postdate the execution of the MSA, and actually ordered the alleged defective bottles do not reference the "AAC terms and conditions of sale."[27] However, they do reference the "Veritiv Corporation terms and conditions of sale" with a hand written note by Flynt indicating "as negotiated by the parties 10/30/2023"[28] referring to the MSA. Flynt explains that the purchase orders reference the "Veritiv Corporation terms and conditions of sale" because the MSA was drafted by Veritiv and therefore represents Veritiv's terms and conditions of sale negotiated by Flynt and Veritiv in the October 2023 MSA. As such, Veritiv maintains that the MSA does not include a forum selection clause and the MSA's "Orders: Dedicated Inventory" provision confirms that the AAC terms and conditions of sale are not binding on either party and/or are not merged into the MSA as a forum selection clause.

The Declaration of Mietus filed in support of Veritiv's Motion to Dismiss declares that the July 27, 2023, Purchase Order, (attached to the Declaration as exhibit B), is an

---

[25] Doc. 20, pp. 3-4.
[26] Doc. 21-4, p. 3. (The bottle old was a tool used to produce the bottles subsequently ordered. Plaintiff's exhibit 1, Miller Flynt Declaration, ¶ 4.
[27] Doc. 21-6.
[28] Plaintiff's exhibit 1, Flynt Decl. ¶ 5.

Order executed by Flynt for the first sales order for the Spiced Rum Bottles. It is this "Order" that Veritiv relies upon to support its argument that the AAC terms and conditions of sale, which includes a forum selection clause (in the Southern District of Florida) merges in to the later executed MSA. The Court has reviewed that sales order and notes that it expressly includes a "Quantity Unit" of "1.00 ea" to be shipped to Mach Flynt, Inc. at 844 Ryan St. 2nd Floor, Lake Charles, Louisiana.[29] The Court has also reviewed the November 2023 Purchase Orders,[30] which were shipped to Brendamour and/or Meier's in Cincinnati, Ohio.[31] The Court finds that the AAC terms and condition apply to the first July 27, 2023, purchase order for a mold of the bottles, whereas the later executed October 2023, MSA does not include the AAC terms because the MSA's Merger Clause expressly states that the MSA "supersedes all prior or contemporaneous understandings, whether written, oral or implied, with respect hereto." Flynt's Declaration declares that "Veritiv's terms and conditions' are those expressly stated in the MSA, which was drafted by Veritiv.[32] The court acknowledges that the MSA's Dedicated Inventory Clause provides that the MSA "together with all Order(s) and documents issued hereunder, are complete and exclusive statements of the agreement between the parties[.], and more significantly, "no other general terms or conditions contained or referenced in any purchase order, proposal, acknowledgement or other document shall be binding on either party."[33] Additionally, the

---

[29] Defendant's Exhibit 1B.
[30] The bottle orders are as follows:
(1) dated 11/8/2023, 11/13/2023, Quantity 181,440
(2) dated 11/6/2023, executed 11/13/2023, Quantity 302,400
(3) dated 11/9/2023, executed 11/13/2023, Quantity 302,400
[31] Defendant's exhibit D, doc. 21-6.
[32] Miller Flynt Declaration, Doc. 23-1.
[33] Doc. 20, ¶ 3.

MSA contains express language in the Merger Clause, that supersedes all prior or contemporaneous understandings, which is buttressed by the November 2023, hand written notes on the November 2023, purchase orders referring to the October 2023, negotiated terms and conditions. The Court finds that the "Veritiv Corporation terms and conditions" are not the same as the "AAC terms and conditions" based on the express language in the MSA. As such, there is no forum selection clause in the MSA.

*Flynt claims as a matter of law under Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Wilson v. Carrington Mortgage Servs. LLC*, CV 24-237, 2025 WL 106428, at *1 (W.D. La. Jan. 15, 2025). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.* The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Id.* When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Id*. In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto. *Id.* at *2.

Veritiv maintains that Flynt's claims fail as a matter of law because its own allegations establish that Flynt unambiguously breached the MSA's Warranties and Remedies clause when it unambiguously canceled its order without permitting Veritiv to replace or refund the alleged defective glass.

Under Delaware law, a party who first commits a material breach of a contract cannot enforce the contract going forward. And a material breach acts as a termination of the contract going forward, abrogating any further obligations to perform by the non-breaching party. A material breach is a failure to do something so fundamental to a contract that the failure to perform the obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract. *Prime Victor Int'l Ltd. v. Simulacra Corp.*, 682 F. Supp. 3d 428, 446–47 (D. Del. 2023) (cleaned up; citing authorities), appeal dismissed, 2024 WL 958377 (3d Cir. Jan. 12, 2024); *accord Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *11 (Del. Ch. July 24, 2013) ("[F]or a breach of contract to be material, it must 'go to the root' or 'essence' of the agreement between the parties, or be 'one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract.'" (quoting *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *5 (Del. Super. Ct. Nov. 28, 2011)), *aff'd*, 108 A.3d 1225 (Del. 2015).

Veritiv remarks that the MSA's Warranty and Remedies clause alters Delaware's default product warranty and remedies rules by limiting Veritiv's warranties and restricting Flynt's remedies to "replacement Products or refund [of] amounts paid for any such defective or non-conforming Products."[34] As such, Veritiv contends that the Warranties and Remedies clause provides Flynt's sole and exclusive remedy.

---

[34] Doc. 20, § 6(b).

Veritiv asserts that Flynt's March 20, termination letter that demanded wholesale cancellation of the entire Veritiv order and demanded a full $366,567.36 refund was in breach of Flynt's obligation under the Warranty and Remedies clause. Veritiv argues that Flynt's Complaint establishes that Flynt materially breached the MSA by its termination letter that was in direct violation of the Warranty and Remedies clause. Thus, as a matter of law, Veritiv argues that Flynt's contract and express warranty claims fail, and any amendment to the Complaint would be futile. As such, Veritiv moves to dismiss Flynt's Complaint.

Flynt argues that the Complaint alleges that the bottles were defective, and remarks that Veritiv's experts who conducted several tests on bottles that had not yet been sent on the Ohio facility's assembly line, show numerous and various defects. Thus, Flynt contends that its allegations of bottle defects coupled with its March 20, 2024, termination letter, and Veritiv's non-response to refund or replace the bottles is sufficient to withstand Veritiv's Rule 12(b)(6) motion. Here, there appears to be a dispute as to what caused the breakage in the bottles, either the assembly line at the Ohio facility, or the alleged defects in the bottles, or both.

Veritiv counters that Flynt ignores the express Warranty and Remedies clause that expressly states that in the event of a defect, Veritiv shall "provide replacement Products or refund amounts paid for any such defective or non-conforming Products," at Veritiv's election.[35]

---

[35] Doc. 20 § 6(b).

Relevant paragraphs to the Complaint allege the following:

8.

Subsequently, Flynt discovered that the Products contained defects in material and workmanship and/or were non-conforming in violation of the express warranties provided by Veritiv in the Agreement. More Specifically, Flynt has identified the following defects and/or non-conformities in the Products: 1) Breakage; 1) Cracks; 3) Bore Hole Cracks; 4) Mold Release on Bottles; 5) Bubbles in the Glass; 6) Split Finishes; and 7) Thin Glass. As a result of these defects and/or non-conformities, Veritiv breached the express warranties provided in the Agreement.

9.

In addition to the defects outlined above, the Products also failed to adhere to industry standards and custom in two significant ways. First, the Products were not laser imprinted with the production date and time, and second, the pallets on which the Products were packaged were not labeled in production order. As a result, there is no ability to trace the Products. Upon information and belief, these failures not only violate industry standards and custom but also violate of [sic]Veritiv's own standards and policies.

10.

Pursuant to the terms of the Agreement, Flynt sent notice to Veritiv of its claim for defective and/or non-conforming Products ("Notice") on March 20, 2024. A copy of the Notice is attached as Exhibit 2. In the Notice, Flynt advised Veritiv that it was rejecting all Products delivered to or produced for Flynt under the Agreement. Flynt also requested a prompt refund of all amounts paid for the Products in the amount of $366,567.36. Veritiv received the Notice on April 10, 2024.

11.

As of the filing of this Complaint, Veritiv has not issued Flynt a refund.

The Complaint further alleges that Flynt has sustained damages in the amount of

$366,567.36.[36]

---

[36] Complaint, ¶ 13, Doc. 1.

Without considering the findings and/or opinions of the experts,[37] the Court finds that Flynt has alleged sufficient facts to survive a Rule 12(b)(6). While the Court acknowledges Veritiv's position that the MSA Remedies clause provides a limited remedy, it will be Flynt's burden to prove the above alleged defects and/or non-conformity that would justify its return of the full refund. However, the Court is relegated as taking the facts alleged as true and will deny Veritiv's Motion to Dismiss for failure to state a claim.

*Failure to join Meier's, Costco, and Shandong*

Veritiv contends that Flynt's Complaint must be dismissed for failure to join parties under Rule 19 of the Federal Rules of Civil Procedure. Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir.2003). Rule 19, in turn, allows the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. *Id.* It also allows for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. *Id.*

A Rule 12(b)(7) analysis entails two inquiries under Rule 19. *Id.* at 439. The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. *Id.* A person should be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the

---

[37] This type of evidence is not considered on a Motion to Dismiss pursuant to Rule 12(b)(6).

interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. Proc. 19(a). If joinder is warranted, then the person will be brought into the lawsuit. *HS Res.*, 327 F.3d at 439. But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation. *Id.*

Factors to consider under Rule 19(b) include "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed." *Id.* For a dismissal to be proper under Rule 12(b)(7), the absent party, if added, must divest the court of subject-matter jurisdiction. *August v. Boyd Gaming Corp.,* 135 Ded. Appx. 731, 732 (5th Cir. 2005).

However, if an absent party can be impleaded by the defendant under Rule 14(a), that party is never considered a required party. *Boone v. Gen. Motors Acceptance Corp.*, 682 F.2d 552, 553 (5th Cir. 1982) (denying defendants' motion to dismiss because they could protect their interests by joining the absent party); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505 (7th Cir. 1980) ("[A]ll persons subject to impleader by the defendant are not indispensable parties. This is, however, merely an extension of the settled doctrine that Rule 19(b) was not intended to require the joinder of persons subject to impleader under Rule 14 such as potential indemnitors."). Under Rule 14(a), a

defendant may add, as third-party plaintiff, a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. Proc. 14(a).

"The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of." *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986). Rule 19(a) "provides a framework for deciding whether a given person or entity should be joined as a party. If joinder is warranted, then the person or entity will be made a party to the suit unless joinder would destroy the court's jurisdiction." *GE Oil & Gas, LLC v. Waguespack*, 523 F. Supp. 3d 926, 937 (W.D. La. 2021) (cleaned up). If joinder would defeat jurisdiction, "Rule 19(b) guides the Court in determining whether the party is 'merely necessary' to the litigation, or in fact 'indispensable.'" *Id.*

The parties' and non-parties' involvement was as follows: Flynt contracted with Meier's for bottling services; Shandong manufactured and shipped the Spiced Rum bottles directly to Meier's in Ohio; Meier's bottling facility ran the initial February 28 run that resulted in the breakage; Meier's bottling facility ran the successful March 6 trial run; Meier's continued to store the Spiced Rum bottles after Flynt cancelled the MSA; Meier's authored and sent the April 1 letter listing verbatim five "issues" that Flynt now expressly alleges as "defects" in its Complaint,48 (Rec. Doc. 1 ¶ 8).

Veritiv suggests that the evidence shows that it was Meier's abusive handling that caused the breakage that allegedly prompted Costo to hold its order and then Flynt to cancel the order. Thus, Veritiv argues that Flynt's claims against Veritiv cannot proceed absent Meier's participation because under the MSA, Flynt has no claim against Veritiv if Meier's

mishandled, misused, or abused the Spiced Rum bottles, or moreover, proving Meier's liability would absolve Veritiv from any liability. Veritiv argues that Meier's absence from this case (i) impairs Veritiv's ability to protect its contracted rights under the MSA, Federal Rule of Civil Procedure 19(a)(1)(B)(i), and (ii) puts Veritiv at substantial risk of a judgment that is blatantly inconsistent with the MSA's disclaimer of any warranty related to damage arising from mishandling, misuse, or abuse, *id.* In other words, Meier's participation will be "critical to the disposition of the important issues in the litigation," and its evidence "will either support the complaint or bolster the defense." *GE Oil & Gas*, 523 F. Supp. 3d at 938. To that end, Veritiv argues that Rule 19(a) requires Meier's joinder. E.g., *id.* (absent parties were necessary under Rule 19(a) where plaintiff's claims against the defendant were "based on the actions of the [absent parties] and therefore the [absent parties] are more than key witnesses whose testimony would be of inestimable value" (quotation marks and alterations omitted; citing authorities)).

Veritiv contends that the same is true of Costco and Shandong because Shandong manufactured and shipped the bottles directly to Meier's at its warehouse and Costco directly precipitated Flynt's cancellation of the contract with Veritiv by putting its Spiced Rum order from Flynt on hold after witnessing the breakage. Veritiv argues that Costco and Shandong's absence in this lawsuit impairs Veritiv's ability to protect its rights and puts Veritiv at risk of inconsistent obligations if these parties are not added to the litigation. Federal Rule of Civil Procedure 19(a)(1)(B).

Next, Veritiv remarks that joining these parties will not destroy jurisdiction or impair Flynt's ability to pursue its claims.

Flynt argues that instead of joinder, Veritiv can implead Meier's, Costco, and Shandong under Rule 14(a), and thus a Rule 19(a) analysis is not necessary. Flynt points out that Veritiv allegations against Meier's, Costco, and Shandong are required because Veritiv, not Flynt, alleges that these non-parties are liable for the damages. Thus, Flynt maintains that Veritiv's motion to dismiss based on Rule 7 for failure to join parties under Rule 19 must be denied. Alternatively, Flynt contends that Veritiv's motion fails because it has not identified an interest which Meier's, Costco, or Shandong claims in the MSA as non-parties to the MSA. Flynt asserts that the absence of Meier's, Costco, Shandong's claims would impair Veritiv's ability to protect its interests is a misapplication of Rule 19(a).

Flynt also contends that Veritiv has failed to explain how it will be left subject to a substantial risk of incurring inconsistent obligations in the absence of Meier's, Costco, and Shandong and that such conclusory allegations do not satisfy the requirements of Rule 19 citing *Woodard v. Woodard Villa, Inc.*, 2016 WL 1298995, at *4 (W.D. La. Mar 31, 2016); *U.S. ex. rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 265 F.R.D. 266, 272 (E.D. La. 2010) ("[T]he key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.")

Lastly, Flynt argues that its claims are not subject to dismissal because as Veritiv concedes, Meier's, Costco, and Shandong can be joined in this lawsuit without destroying diversity and the Court's jurisdiction.

The Court agrees with Flynt that Veritiv can implead these parties as allowed by Rule 14(a) and thus a Rule 19(a) analysis is not necessary. Veritiv's Motion will be denied.

*Veritiv's forum non conveniens*

Next, Veritiv suggests that the Southern District of Ohio is a more convenient venue and can be transferred. A court may transfer an action to any other proper judicial district "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of proving that a change of venue is warranted. *EPS Logistics Co. v. Cox Operating, L.L.C.*, 6:21-CV-01003, 2021 WL 3504102, at *1 (W.D. La. June 30, 2021), *report and recommendation adopted*, 6:21-CV-01003, 2021 WL 3482995 (W.D. La. Aug. 6, 2021).

The party seeking transfer must show good cause for the transfer. *Id.* Unless the moving party shows that the transfer is "clearly more convenient," the plaintiff's choice of venue must be respected. *Id.* The threshold inquiry is whether the suit might have been brought in the proposed transferee venue; if so, then relevant private interest and public interest factors are analyzed. *Id.*

The Fifth Circuit has adopted the private interest factors and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) for determining whether a Section 1404(a) venue transfer should be granted for the convenience of parties and witnesses and in the interest of justice. *EPS Logistics*, 2021 WL 3504102, at *2.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.*

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id. A*nother public interest factor which is sometimes considered is: (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir.1999).

These factors are neither exhaustive nor exclusive and not one of them is dispositive. *EPS Logistics*, 2021 WL 3504102, at *2. Finally, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." *Vasquez*, 325 F.3d at 672.

Veritiv asserts that this action could have been brought in Ohio, Meier's home and location of the Brendamour Warehouse and where the Spiced Rum bottles were delivered, allegedly broken, and where they are currently located.

Veritiv contends that the public and private factors weigh in favor of transfer to Ohio. Veritiv makes the assumption that the bottles were broken on the assembly line by Meier's employees, thus critical witnesses are in Ohio.

Flynt argues that Ohio is not a "clearly more convenient" venue than the Western District of Louisiana, and more significantly, it is unclear as to whether the Southern District of Ohio is a forum in which this suit might be brought. Flynt also argues that the

public and private factors do not weigh in favor of bringing this action in Ohio. Flynt maintains that this Court should respect its choice of forum.

At the onset, Veritiv must prove that the Southern District of Ohio was a district where this matter could be brought by demonstrating that it was subject to personal jurisdiction in that venue at the time the lawsuit was filed. *Guzzetti v. Citrix Online Holdings GmbH*, 2013 WL 124127, at *3 (D. Del. Jan. 3, 2013). Veritiv remarks that it is subject to specific jurisdiction in Ohio because the bottles were delivered to Ohio, Veritiv is registered to conduct business with the Ohio Secretary of State, and maintains Ohio offices and warehouses in Ohio. The Court agrees that this satisfies general jurisdiction.

Veritiv argues that the private interest factors favor transfer because many of the witnesses are in Ohio, and as such cannot be compelled in Ohio, and travel by these witnesses would be complicated and costly. Veritive refers to three potential (3) Meier's witnesses—Sarah Ossege, Randolph Carter, and Mark Brzezicki. Additionally, the physical evidence is in Ohio.

Flynt remarks that the three primary sources of proof in this matter include (1) witnesses; (2) documents; and (3) defective bottles. Flynt informs the Court that it has four (4) potential witnesses—Miller Flynt, DC Flynt, A'Dair Flynt, and Preble Giltz that reside in this District. Additionally, Flynt suggests that there will be Veritiv employees who are likely to be witnesses that reside in various locations, but do not reside in Ohio. For example, Greg Badano, who was Flynt's primary contact resides in California. Brian Luong, who was involved with negotiating the MSA resides in Georgia. Guy Considine, another primary contact, resides in Illinois. Nacy Bride, the sender of Veritiv's demand

letter to Flynt, resides in Georgia. Jason Mietus, who executed Veritiv's declaration, resides in Florida, and Veritiv's two experts reside in Pennsylvania and Florida.

As to Flynt's documents and/or records, Flynt advises the Court that this evidence is in this District. Flynt admits that approximately 40,000 cases are in Ohio, but an additional 70,000 cases are primarily in Veritiv's Belle Vernon, Pennsylvania Warehouse. Regarding Veritiv's assembly line evidence, Flynt remarks that even though the defects in the bottles were first identified while on Meier's bottling line, Veritiv's experts identified numerous defectives bottles that were never run on the assembly line. Flynt also mentions that some of the bottles inspected were at the Pennsylvania warehouse. To complicate matters further, the machines that manufactured the alleged defective bottles are in China's Shandong Province. Finally, Flynt suggests that video depositions could be taken for those witnesses outside the compulsory process.

Here, the Court finds that the private interest factors do not weigh in favor of transfer to Ohio.

The Court has also considered the public interest factors. The Court finds that the comparison between Ohio and this District concerning court congestion as set forth in Flynt's Memorandum does not weigh in favor of transfer. The Court further finds that there is a strong local interest in having this dispute decided here in the Western District of Louisiana. Flynt is a Louisiana corporation and resides in this District. Flynt asserts claims for breach of the MSA, which was negotiated and executed by Flynt in this District. Furthermore, as explained by Flynt, Louisiana has a public interest in protecting its

companies. See *Humble Equip. Co. Inc. v. Team Eagle Ltd.*, 2018 WL 3946022, at *7 (W.D. La. Aug. 15, 2018). Thus, this factor does not favor transfer.

As to familiarity of the forum with the law,[38] and the avoidance of unnecessary problems of conflict of laws, these factors are neutral.

There is a strong presumption in favor of a plaintiff's choice of forum. *Vasquez v. Bridgeston/Firestone, Inc.,* 325 F.3d 665, 672 (5th Cir. 2003) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The Court finds that Veritiv has failed to demonstrate that the Southern District of Ohio is a "clearly more convenient" venue.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court will deny Veritiv Operating Company's Motion to Dismiss or Transfer (Doc. 21) in its entirety.

**THUS DONE AND SIGNED** in Chambers on this 10th day of March, 2025.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[38] The parties agree that Delaware law will be applied as required by the MSA.